**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARY MASLANKA,      ) | FILED: SEPTEMBER 2, 2008 |
|                     ) | 08CV4990 |
|     Plaintiff,      ) | JUDGE NORGLE |
|                     ) | MAGISTRATE JUDGE NOLAN |
|     vs.      ) | CH |
|                     ) | |
| TEK-COLLECT INCORPORATED,      ) | |
|                     ) | |
|     Defendant.      ) | |

<u>**COMPLAINT**</u>

<u>**MATTERS COMMON TO MULTIPLE CLAIMS**</u>

<u>**INTRODUCTION**</u>

1.      Plaintiff Mary Maslanka brings this action to secure redress from unlawful credit and collection practices engaged in by defendant Tek-Collect Incorporated.  Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and the Illinois Collection Agency Act, 425 ILCS 225/1 et seq. ("ICAA").

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods;  conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3.      The Illinois Collection Agency Act reflects a determination that "The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes. . . . It is further declared to be the public policy of this State to protect consumers against debt collection abuse."  225 ILCS 425/1a.

1

## VENUE AND JURISDICTION

4.    This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28  U.S.C. §§1331, 1337 and 1367.

5.    Venue and personal jurisdiction in this District are proper because:

    a.    Defendant's collection communications were received by plaintiff within this District;

    b.    Defendant does business within this District.

## PARTIES

6.    Plaintiff is an individual who resides in the Northern District of Illinois.

7.    Defendant Tek-Collect Incorporated is an Ohio corporation with offices at 1111 Shrock Road, Suite 100, Columbus, OH 43229.

8.    Tek-Collect does business in Illinois.

9.    Tek-Collect operates a collection agency.

10.    Tek-Collect's principal business is the collection of consumer debts allegedly owed to others.

11.    Tek-Collect uses the mails and telephones to conduct its business.

12.    Tek-Collect is a debt collector as defined in the FDCPA.

13.    Tek-Collect is a licensee under the Illinois Collection Agency Act.

## FACTS

14.    Plaintiff is the legal representative of an elderly nursing home patient, Viola Curtis.

15.    Defendant is attempting to coerce plaintiff to assume personal liability for the cost of the care of Viola Curtis.

16.    Plaintiff is not personally liable for the debts of Viola Curtis.

17.    Plaintiff has not signed any agreement relating to the care of Viola Curtis except in a representative capacity, as representative of Ms. Curtis.

2

18.     On or about October 6, 2007, Tek-Collect sent plaintiff the letter attached as <u>Exhibit A</u>, asserting that "you" – Ms. Maslanka – "have a past due outstanding balance" to Care Centers, Inc.

19.     On or about October 26, 2007, defendant sent plaintiff the letter attached as <u>Exhibit B</u>.

20.     On or about November 10, 2007, Tek-Collect sent plaintiff the letter attached as <u>Exhibit C</u>.

21.     On or about December 10, 2007, Tek-Collect sent plaintiff the letter attached as <u>Exhibit D</u>.

22.     Each of these letters asserted that she was personally obligated to pay for the care of Ms. Curtis.

23.     The only contract Ms. Maslanka signed was clearly signed as representative of Ms. Curtis and not in any individual capacity.(<u>Exhibit E</u>).

24.     Defendant continued demanding payment from Ms. Maslanka, personally, after the fact that she had not signed anything except on behalf of Ms. Curtis was pointed out to defendant, as shown by <u>Exhibits F and G</u>.

25.     In addition, during the 12 months preceding the filing of this action, defendant Tek-Collect reported the purported debt to the Trans Union consumer reporting agency (credit bureau) and possibly others as a personal debt of Ms. Maslanka.

26.     A report of a debt to a credit reporting agency is a "powerful tool designed, in part, to wrench compliance with  payment terms".  <u>Rivera v. Bank One</u>, 145 F.R.D. 614, 623 (D.P.R. 1993).

27.     Plaintiff was injured by the false credit reporting.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

28.     Plaintiff incorporates 1-27.

29.     <u>Exhibits A-D</u> and the credit reporting violated 15 U.S.C.  §§1692e,

3

1692e(2), 1692e(5), 1692e(8), and 1692e(10).

30.    Section 1692e provides:

> **§ 1692e.    False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(2)    The false representation of--**
> **(A)    the character, amount, or legal status of any debt; . . .**
>
> **(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**
>
> **(8)    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . . .**
>
> **(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant for:

(1)    Statutory damages;

(2)    Actual damages;

(3)    Attorney's fees, litigation expenses and costs of suit;

(4)    Such other and further relief as the Court deems proper.

## COUNT II  – ILLINOIS COLLECTION AGENCY ACT

31.    Plaintiff incorporates paragraphs 1-27.

32.    Defendant is a "collection agency" as defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq.

33.    Defendant violated the following provisions of 225 ILCS 425/9:

**. . . (13) Disclosing or threatening to disclose information adversely affecting a debtor's reputation for credit worthiness with knowledge the information is false. . . .**

4

**(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.**

34.     A private right of action exists for violation of the ICAA.  <u>Sherman v. Field Clinic</u>, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff  and against defendant:

        a.     Compensatory and punitive damages;

        b.     Costs.

        c.     Such other and further relief as is appropriate.


<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiff demands trial by jury.


<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman

T:\21749\Pleading\Complaint_Pleading.WPD

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

<u>s/ Daniel A. Edelman</u>
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**EXHIBIT A**



# TEK–COLLECT, INC.

*10/6/2007*
PO BOX 26390 / COLUMBUS, OHIO / 43226

*' 000*

| | |
|---|---|
| Creditor: Care Centers, Inc. | |
| Reference No: Chateau Village | |
| Amount Due: $13,303.48 | |

PERSONAL AND
CONFIDENTIAL
*

MARY MASLANKA

SEND TO:
Care Centers, Inc.
ATTN: JOYCE ROSSI
2201 WEST MAIN STREET
EVANSTON, IL 60202

---

Return Top Portion With Your Payment

---

Re: Care Centers, Inc.
Phone: (847) 905–3220
Reference #: Chateau Village

Amount Due:          $13,303.48

---

Tek–Collect, Inc. is conducting a balance verification audit to verify the accounts receivable balances for:

Your Creditor: Care Centers, Inc.
ATTN: JOYCE ROSSI 2201 WEST MAIN STREET
EVANSTON, IL 60202

Our client's records indicate that you have a past due outstanding balance of:

Amount Due: $13,303.48

Please verify that the amount shown above is correct, sign the balance verification line below and return the notice to us at the address below.

Please note: If you have already made payment, advise Tek–Collect, Inc. to cease further contact. If not, send your remittance using the pre–addressed tear–off portion of this letter and the enclosed return envelope.

Tek–Collect, Inc. is a debt collector attempting to collect a debt and any information obtained will be used for that purpose. Tek–Collect, Inc. has been authorized by your creditor to continue the collection process if the full amount due remains unpaid.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that the debt, or any portion thereof, is disputed, this office will obtain verification of the debt or a copy of a judgment and mail you a copy of such judgment or verification. If you request in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Your prompt response will be appreciated.

I verify the balance as correct:_____
Signature

---

TEK–COLLECT, INC.
P.O. Box 26390 / Columbus, OH 43226

OIC–GRN–7407

F-254    P.006    T-966                          -FROM-    05:40PM    07-23-2008

**<u>EXHIBIT B</u>**

# TEK–COLLECT, INC.

*10/26/2007*

PO BOX 26390 / COLUMBUS, OHIO / 43226

| Creditor: Care Centers, Inc. |
| Reference No: Chateau Village |
| Amount Due:  $13,303.48 |

PERSONAL AND
CONFIDENTIAL            *

MARY MASLANKA

lildlllıııdlııdıllılıııılılılılıııılldlılldllıııdlll

SEND TO:
Care Centers, Inc.
ATTN:  JOYCE ROSSI
2201 WEST MAIN STREET
EVANSTON, IL 60202

---

Return Top Portion With Your Payment

---

Re:  Care Centers, Inc.
Phone: (847) 905–3220
Reference #:  Chateau Village

Amount Due:            $13,303.48

---

## TEK–COLLECT, INC. is a collection agency.

## This is an attempt to collect a debt.  Any information obtained will be used for that purpose.

Our client has asked us to contact you about the past due amount shown above.  If you have any questions regarding payment, please call Care Centers, Inc. directly at (847) 905–3220.  If not, we now ask that you make full payment today.

Send your check or money order, payable to Care Centers, Inc. for the full amount due.

We have pre-addressed the upper, tear–off portion of this letter and have included a return envelope for your convenience.

When your obligation has been resolved, we will clear this record from our active collection files.

Thank you.

OIC–GRN–2032

F-254    P.005    T-996                                    FROM-    05:40PM    07-23-2008

**EXHIBIT C**

# TEK–COLLECT, INC.

*11/10/2007*

PO BOX 26390 / COLUMBUS, OHIO / 43226

| |
| --- |
| Creditor: Care Centers, Inc. |
| Reference No: Chateau Village |
| Amount Due: $13,303.48 |

**PERSONAL AND
CONFIDENTIAL**

▮▮▮▮▮▮   ✳

**MARY MASLANKA**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

ılıllıılıdıılıdılıılııdıılıdılıılıılıdllıılı

SEND TO:
Care Centers, Inc.
ATTN: JOYCE ROSSI
2201 WEST MAIN STREET
EVANSTON, IL 60202

Return Top Portion With Your Payment

Re: Care Centers, Inc.
Phone: (847) 905–3220
Reference #: Chateau Village

Amount Due:          $13,303.48

## TEK–COLLECT, INC. is a collection agency.

**This is an attempt to collect a debt.  Any information obtained will be used for that purpose.**

TAKE NOTICE:  If payment has not been made on the above referenced obligation, then return this document with your payment payable to Care Centers, Inc..  Send your remittance using the pre–addressed tear–off portion of this letter and the enclosed return envelope.

If you have already made payment, please advise Tek–Collect, Inc. immediately to cease further contact.

You are hereby notified that the lawful obligation shown above remains outstanding and our attempts to resolve this matter amicably have been ignored.  Your creditor has provided us with full authority to pursue this debt with all available pre–litigation remedies.

If there is a valid reason why you have not paid this debt or if there are adjustments to the amount claimed, contact Care Centers, Inc. immediately at (847) 905–3220 or the collection process will proceed.

Unless your payment is received forthwith, additional collection action will be commenced.

Please govern yourself accordingly.

REGIONAL
COLLECTION
OFFICER DIVISION          COLLECTION DEMAND

## TO AVOID FURTHER ACTION, PLEASE MAKE IMMEDIATE PAYMENT!

ÞSZ-J    Þ00'd    996-⊥          -WOЯℲ    Wd0Þ:S0 800Z-EZ-⊥0

**<u>EXHIBIT D</u>**

*12/10/2007*

# TEK–COLLECT, INC.

PO BOX 26390 / COLUMBUS, OHIO / 43226

| | |
|---|---|
| Creditor: Care Centers, Inc. | |
| Reference No: Chateau Village | |
| Amount Due: $13,303.48 | |

**PERSONAL AND CONFIDENTIAL**

MARY MASLANKA

SEND TO:
Care Centers, Inc.
ATTN: JOYCE ROSSI
2201 WEST MAIN STREET
EVANSTON, IL 60202

Return Top Portion With Your Payment

Re: Care Centers, Inc.
Phone: (847) 905–3220
Reference #: Chateau Village

Amount Due:        $13,303.48

## TEK–COLLECT, INC. is a collection agency.

**This is an attempt to collect a debt.  Any information obtained will be used for that purpose.**

### FINAL NOTICE

All previous efforts seeking a conclusion to this delinquency have apparently been in vain.

We are obligated to our client to use our best efforts to collect this account.

IF YOU FAIL TO RESOLVE THIS ISSUE, YOU WILL BE REPORTED TO ONE OR MORE OF THE CREDIT BUREAUS (TRW/EXPERIAN, TRANS UNION AND EQUIFAX) AND YOUR CREDIT RECORD WILL BE NEGATIVELY AFFECTED FOR UP TO 7 YEARS.

If we do not receive payment within 10 days from the date of this letter, then additional action will be initiated.

Your response to this situation is now required.  Further delay will result in consequences, of which you have been informed.

Use the tear–off portion of this letter and the enclosed return envelope to send your payment.  This will ensure accurate application to your account.

OIC–RED–9591

F-254    P.003    T-966                                -MORF    WP39M 05:39PM    07-23-2008

**<u>EXHIBIT E</u>**



Dear Resident, Family or Friend of _____ Vjlu Curtis _____

It is the practice of our nursing home to assist all residents in applying for Medicaid when needed, however, the primary obligation to do so rests with the resident and/or the resident's family. It is the responsibility of each resident and/or his/her representative to inform our admitting staff when the resident's assets are not expected to cover more than three months of Long Term Care expenses. This should allow appropriate time for the Medicaid application process. Under the Spousal Impoverishment Act, a greater asset allowance is provided for married residents with a spouse residing in the community.

It is the policy of this facility to require and hold a deposit from a Medicaid Pending resident until the Facility receives a Medicaid reimbursement notice. The Medicaid notice indicates the date and amount that Medicaid will begin paying the facility for the care of the resident. The Medicaid notification is generally received by the facility within six months of Medicaid approval. Once the notice is received, the account of the resident will be adjusted to reflect the Medicaid reimbursement decision and any overpayment will be distributed to the appropriate party(s) within approximately 60 days. In the event Medicaid is denied, a spenddown of assets is declared, or monthly income has been withheld, the deposit will be applied to the resident's cost of care before a refund, if any, is issued.

**It is understood that at admission a Medicaid / Medicaid Pending resident's total monthly income (social security, pension, disability, etc.), less the state approved personal needs allowance and other state approved deductions, is to be turned over to the nursing home by the 10th of each month to be applied toward the cost of care. In cases where the Spousal Impoverishment Act applies the "Available Income" will be determined as set forth by the guidelines of the applicable state department.**

By signing below I understand and agree to the above conditions.

_Mary L. Maslanka_
Resident or Representative

_3-21-07_
Date

_Gleta A. Arvuntn_
Facility Representative

_03/21/07_
Date

# ADMISSION AND PAYMENT AGREEMENT

On this _14th_ day of _March_, 200_7_, in _Willowbrook_, County of _DuPage_, State of Illinois, this Admission and Payment Agreement ("Contract") is entered into between the following parties for the purpose of providing Comprehensive Care for the identified Resident:

Facility: _Chateau Village Nursing & Rehabilitation Center_

Resident: _Viola Curtis_

Legal Representative: _Mary Maslanka_

## A. Definitions

1. **"Facility"** shall mean the Facility identified in the Preamble above, and shall include all agents, employees, consultants, experts, attorneys, and all other persons acting or purporting to act on behalf of the Facility.

2. **"Resident"** shall mean the individual who is being admitted for care, room and board in the facility.

3. **"Legal Representative"** shall mean the following:

   a. **For a Medicaid resident:** the individual with access to the Resident's income and assets, who shall be responsible for ensuring the Resident's income and assets are used to pay the resident's financial obligations to the Facility. This term may include a court-appointed Guardian, Power of Attorney, Attorney-In-Fact or Durable Power of Attorney. The Facility may hold the Legal Representative of a Medicaid resident personally liable up to the value of the Resident's income and assets that the Legal Representative does not use to pay the Facility for the Resident's long term care and, by signing this Agreement, the Legal Representative agrees to be liable if s/he does not use the Resident's income and assets to pay the Facility for the Resident's long term care. By signing this Agreement, the Legal Representative under this subsection acknowledges that the facility is not requiring a third-party guarantee of payment as a condition of admission.

   b. **For all other residents:** the individual, along with the Resident, who is personally liable to satisfy from the Resident's income and assets any and all charges for services provided by the Facility to the



Resident, beginning on the date of admission and ending on the date of discharge. This includes, but is not limited to, the Facility's charges incurred due to: (1) any denial of the Resident's application to participate in the Medicaid program; (2) Medicare co-insurance and Medicare non-covered services charges; (3) Third-party payer sources denial of coverage; and, (4) the Resident and Legal Representative's failure to apply for Medicaid eligibility or to cooperate in establishing the Resident's eligibility. By signing this Agreement, the Legal Representative under this subsection acknowledges that the facility is not requiring a third-party guarantee of payment as a condition of admission.

**B.**   **Term**

This     Agreement     shall     be     effective     and     commence     on
_____ 200_7_, and terminate upon discharge from the Facility, when that discharge requires the Resident's health record be closed pursuant to the Health Record Closure Policy of the facility, or when terminated in accordance with the provisions of this Agreement.

**C.**   **Financial**

1.   **Payer Source**

The Resident's financial obligation shall be the responsibility of the following payer source:

Mc[TVS] PAP                                          / Legal Representative.
See *"Payment of Charges"* to follow.

2.   **Obligations of Parties**

In consideration of the payment of the daily rate and compliance with all terms and conditions set forth in this Agreement by the Resident and the Resident's Legal Representative, the Facility agrees to provide the Resident with room and board, nursing care and services, medical supplies, bedding, linen, laundry services and such personal services as may be determined by the Facility to be legally and reasonably required for the promotion of the health, safety and welfare of the Resident in accordance with the terms and conditions set forth in this Agreement.

In return therefore, the Resident and the Resident's Legal Representative agree to be liable for compliance with the terms of this Agreement,

Agreement, including the obligation to pay the Facility the basic room charge and the cost of any additional services. The Legal Representative is liable for any and all payments hereunder from the funds of the Resident. Payment shall be made upon receipt of monthly invoices. The basic room charge is _____per day which includes:

a. Nursing care;

b. Meals in the dining areas or at the bedside, as required;

c. Housekeeping;

d. Laundry, excluding personal laundry where applicable;

e. Social Service;

f. Activity programming;

g. Billing third-party payers;

h. Therapeutic diets, not including enteral feeding or supplemental formula;

i. Personal services as may be determined to be legally and reasonably required for the health and safety of the Resident;

j. On-going comprehensive assessment and development of a plan of care;

***Items not covered in the basic charge are:***

a. Physician services;

b. Personal clothing;

c. Biologicals (i.e. treatment supplies, ointments, etc.), pharmaceuticals and pharmacy services;

d. Optical care, including eyeglasses;

e. Dental care, including dentures;

f. Laboratory test(s);

g. Personal hygiene items and expenses;

h. Personal laundry, where applicable;

i. Haircuts, shampoos, permanents and coloring;

j. Hearing aids;

k. Billable medical supplies, per facility policy where applicable.

l. Specialized rehabilitative service (physical, respiratory, speech, occupational, physical therapy, etc)

m. Oxygen tank usage

**n.** Oxygen concentrator rental

The above non-covered items shall be in addition to the basic charge. The Resident and the Resident's Legal Representative have been given the opportunity to ask and answer questions and to ask for any further clarifications.

**3.  Payment of Charges**

Charges due under the terms and conditions of this Agreement shall be paid by the following payer sources in the amounts or portions indicated:

**Resident or Legal Representative**

- ◆ All eligible charges incurred.
- ◆ Coinsurance in the amount periodically determined by Medicare or twenty percent (20%) of eligible charges under Part B of the Medicare program, and eligible charges for services not covered by Medicare.
- ◆ Eligible charges not paid by third-party payers in accordance with applicable third-party contracts.
- ◆ In the event Medicaid payments are terminated, Resident/Legal Representative shall make all payments for Resident's room, board and care for so long as Resident shall remain in the Facility to the extent not covered by Medicaid.

**Medicare**

- ◆ All eligible charges covered until full covered days are exhausted or are no longer applicable, then all eligible charges less the Resident's daily coinsurance amount.
- ◆ 80% of any eligible charges covered under Part B of the Medicare Program.

**Medicaid**

- ◆ All eligible charges, less the Resident's predetermined monthly liability amount.

**Insurance**

- ◆ All eligible charges, as specified in the contract for insurance or in this Agreement.

**Veterans Administration**

- ◆ All eligible charges, as specified in the contract for coverage or in this Agreement.

Charges billed by the Facility shall include, but are not limited to, amounts reflecting daily services for the period covered, plus amounts reflecting such additional supplies and services determined by the Facility, the Resident or the Resident's physician to be necessary and proper for the Resident's health, comfort, rehabilitation and safety. Any failure by the Resident or the Resident's Legal Representative to pay for such additional supplies or services shall authorize the Facility to, at its discretion, remove the Resident from the Facility, subject to applicable State and Federal law.

With respect to the beneficiaries of all public assistance programs, the Facility shall provide the Resident with all necessary and required additional services, non-legend drugs and supplies authorized by such governmental public assistance programs.

The Resident and the Resident's Legal Representative accept full responsibility for, and agree to pay, the full amount charged by the Facility in the event that any third-party payer shall deny coverage or responsibility for the Resident's claim, or any part thereof. For the purpose of this paragraph the phrase "third party" shall include the U.S. Department of Health and Human Services, Social Security Administration, the Illinois Department of Public Aid, any insurance company and any other authorized governmental or non-governmental payer. With respect to the Medicare program, disallowance of any item of cost shall not constitute denial of coverage.

The Resident may apply to the Medicare or Medicaid program(s), and if the Facility's Distinct Part is a provider of such services under the program(s), the Facility agrees to accept payment from either or both of these programs and the Resident's portion as payment in full for its services provided in the Distinct Part.

If a Resident fails to apply promptly to any third-party payer source for which the Resident is eligible, the Facility is authorized in its sole discretion, to prepare all necessary forms and documents for the Resident's or the Resident's Legal Representative's signature, which signature shall not be unreasonably withheld, and submit such forms and documents to the appropriate State and Federal agencies for a determination of the Resident's eligibility and benefits under the Medicare or Medicaid program(s). The Resident and the Resident's Legal

5.

Representative hereby certify that the information given by them to enable the Facility to apply for payment under Titles XVIII and XIX of the Social Security Act is correct; further the Facility is hereby authorized and directed to release information concerning the Resident to other medical facilities, insurance companies, Federal and State agencies and regulatory bodies in relation to an illness of, or treatment to be rendered to the Resident to the extent necessary to obtain payment and otherwise comply with applicable law.

**4. Rate and Room Changes**

The Facility may change the daily rate and charges for other services only upon thirty (30) days advance written notice to the Resident and the Legal Representative, at the address or addresses indicated in this Agreement. It is also understood and agreed that a room transfer may occur. Such a room transfer may be necessitated by a change in the level of care required by the Resident as a result of changes in the physical or mental condition of the Resident, or when it is determined by the Medical Director of the Facility, the Administrator of the Facility or the Facility Representative that the transfer is required to meet the residents' needs, to better provide care for the resident or to ensure the welfare of the other residents. Such transfer may result in a change in the Basic Room Charge. Charges for services in addition to general nursing care do not constitute a change in the daily rate. Amounts paid by government programs on behalf of their beneficiaries shall be determined only by those government agencies.

**5. Advance Payment**

An amount equal to thirty (30) times the daily rate shall be paid in advance of the admission of the Resident. Upon discharge of the Resident and/or termination of the Agreement for any reason, the advance payment shall be refunded by the thirtieth (30th) day following such discharge or termination and after deduction of such charges that are applicable to the Resident's care as of the date of such discharge or termination. This payment is not a deposit, but rather an advance payment which applies to the first thirty (30) days of care. If discharge occurs within ten (10) days of admission a minimum charge equal to the daily rate for ten (10) days' stay shall be deducted. The advance payment described above shall not be required of Medicare or Medicaid recipients.

## 6. Payment

All amounts due shall be paid promptly, no later than the tenth (10th) day of the current month. A failure to make full payment when due may be treated by the Facility as grounds for termination of the Agreement. The Facility retains the right to interest at the rate of 1.5% per month (18% annual), or at the maximum rate allowed by law, on the unpaid balance. In the event of failure or refusal to pay amounts charged under the terms of this Agreement, Resident/Legal Representative agrees to pay all charges and expenses incurred in the collection of this balance, including, but not limited to court costs and reasonable attorney fees.

*If the monthly patient income, as determined by the State Medicaid Program, is not paid by the tenth (10th) day of the current month, the Resident/Legal Representative hereby grants the Facility the right to pursue any and all responsible parties, in the stead of the Resident, to recover any and all amounts which were not remitted.*

## D.  Facility Responsibilities and Services

1. *Special Equipment:* In the event that the Resident brings special equipment for personal use, Resident does so at his/her own risk and must have the prior consent of the Facility.

2. *Special Duty Nursing:* If the Resident needs or otherwise desires continuous or special duty nursing care, Resident/Legal Representative, shall arrange for and pay for such nursing services. Facility shall not, under any circumstance, be held liable or responsible for failure to provide such special nursing services.

3. *Physician Services:* The Resident shall have a personal physician who is available and will visit the Resident regularly according to the policies of the Facility, as well as be available for emergencies. The Resident shall provide the facility with the name, address and phone number of the Resident's physician. Resident's personal physician may be called to attend Resident as deemed necessary by the Facility. If that physician is not available, does not comply with any applicable Federal or State statute, rules and/or regulations, or the Resident has not advised the Facility of the Resident's personal physician, the Facility is hereby authorized by the Resident/Legal Representative to provide a physician for the Resident, with

any cost and/or expense incurred to be borne by the Resident/Legal Representative.

It is understood that the Resident is under the medical management of his or her attending physician and that the physician is not an employee of the Facility. The physician is an independent contractor and the Facility is not liable for any act or omission in following the physician's instructions. The parties hereto consent to any and all x-ray examinations and medical and/or laboratory services, including therapies rendered to the Resident under the general and special instructions of the physician, and that the Resident/Legal Representative agree to pay for the costs and/or expenses incurred pursuant to such instructions.

4. *Emergency Services:* The Resident/Legal Representative authorizes the Facility to arrange for any emergency medical treatment deemed necessary, unless otherwise indicated by the signing of specific Advance Directives pursuant to State law. In the absence of a specific direction prohibiting same, the Facility shall provide emergency medical treatment or transfer the Resident to a hospital or other medical facility which is able to provide the Resident with necessary medical care and treatment. The cost of transporting the Resident and the cost of the medical care and treatment at such other facility shall be borne by the Resident/Legal Representative.

5. *Resident Safety:* The Facility shall take reasonable precautions for the care and safety of the Resident, and absent any negligence by Facility staff, shall incur no liability for personal injuries of any kind suffered by the Resident while under its care. The Facility is not responsible for any Resident who is temporarily away from the Facility, while under the care of any person not directly employed by the Facility.

6. *Civil Rights:* The Facility operates under, and in compliance with, the terms of Title VI of the Civil Rights Act of 1964, and any and all amendments thereto and the Americans with Disabilities Act. No distinction will be made on the grounds of race, creed, national origin religious conviction, disability or gender in the admission and treatment of residents, the accommodations provided, the use of equipment and other facilities and the assignment of personnel to provide services.

7. *Resident Rights:* The Facility shall inform the Resident and the Legal Representative, both orally and in writing, in a language that the Resident and the Resident's Legal Representative understands, of the Resident's

8.

rights within the Facility, and the rules governing the Resident's conduct as well as the Resident's obligations while a Resident of the Facility.

In the event any Resident's rights are altered, amended or new rights awarded, the Facility shall inform the Resident and the Resident's Legal Representative of the alteration, amendment or addition.

The Facility shall inform the Resident/Legal Representative of the manner of protecting personal funds and of the right to: File a Complaint with the State Survey and Certification Agency; the Name and Phone Number of the Ombudsman; and the right to a change in room.

E.     **Responsibilities of Resident/Legal Representative**

   1. *Personal Funds:*     Resident/Legal Representative will provide such spending money as is needed for Resident's well-being. The Facility will not provide any spending money to Resident other than what is prescribed by Medicaid regulations. Such spending allowances shall be treated in accordance with regulations governing Residents funds.

   2. *Personal Property:*  Resident may retain and use personal possessions, including some furnishings and appropriate clothing, as space permits, unless to do so would infringe upon the rights or the health and safety of other residents. Resident/Legal Representative will provide and mark any such personal possessions as needed and desired. The Facility will not be responsible for any money, valuables, or personal effects brought into the Facility by Resident, Legal Representative, relatives, or friends. The Facility shall, however, provide a safe place for Resident's valuables when said valuables are given directly to the Administrator or his or her designee. The Resident may have daily access to such items during normal business hours.

   3. *Facility Rules:*  Resident/Legal Representative, shall abide by all rules and regulations established in connection with the operation and maintenance of the Facility. The rules and regulations of the Facility are contained in the Statement of Facility Policies, or the Resident Handbook, a copy of which shall be delivered to the Resident/Legal Representative at the time this Agreement is signed.   The Resident and Legal Representative hereby acknowledge the receipt of a copy of the Resident Rights.

The Resident and the Resident's Legal Representative hereby expressly acknowledge that the Facility has provided the Resident or the Resident's

Legal Representative with information concerning the availability of Advance Directives, including, the Living Will and Life Prolonging Procedures Declaration. In addition, the Resident and the Resident's Legal Representative hereby expressly acknowledge that the Facility has provided the Resident or the Resident's Legal Representative with the following information: information concerning the Resident's right to consent to, to refuse, or withhold consent for medical treatment, including emergency medical treatment; information concerning the appointment of a health care representative; information concerning a durable power of attorney for health care; and, the Resident's right to be fully informed before making a health care decision.

No foodstuffs, liquids or medicines may be brought into the Facility without prior permission being obtained from the Administrator or Nurse in Charge. Food must not be kept overnight without the consent of the Administrator, and if such consent is given, all food must be kept in sealed containers.

Resident/Legal Representative, shall be responsible for repair or replacement of property of the Facility, the staff, or of other residents, destroyed or damaged by the Resident and for any injuries to staff or to other residents caused by the Resident. Ordinary wear and tear are excepted.

4. *Resident Safety:* Reasonable precaution will be taken for the care and safety of the Resident. However, in the event of the Resident's withdrawal from the Facility against the advice of his or her attending physician and/or without the approval of the Facility, all responsibility of the Facility hereunder terminates.

5. *Bed Hold:* In the event of hospitalization of the Resident, the Resident/Legal Representative, agrees to pay all ambulance charges. The Resident/Legal Representative also agree to pay the agreed-upon rate for holding a bed vacant for the Resident until the Facility is notified to release the bed or the Resident returns to the Facility.

A Medicaid recipient's bed is held according to the Medicaid program, or for ten (10) days. The Facility will continue to reserve a bed past the expiration period if the Resident/Legal Representative notifies the Facility in writing, prior to the expiration time, of the Resident's intention to return. For each additional day the Resident's bed is reserved beyond the allocated days approved by the Medicaid program, the Resident may agree to pay the Facility its current daily private basic room rate. A Resident may be

readmitted after ten (10) days to the first available multi-bed room which meets the needs of the resident.

6. **Resident's Funds:** Unless determined incompetent by a court of competent jurisdiction, the Resident has the right to manage his or her personal financial affairs. If the Resident wishes to deposit personal funds with the Facility, the Facility will provide the following:

a. Any funds in excess of $50.00 will be maintained in an interest bearing account, and the earned interest paid to the Resident.

b. The Facility shall provide the Resident a written quarterly accounting of personal funds maintained by the Facility. In addition, the Resident shall have reasonable access to his or her personal financial records during normal business hours.

The Resident and the Resident's Legal Representative shall be provided with information on the manner of protecting the Resident's personal funds.

**F.    Termination of the Agreement**

1. The Resident or the Resident's Legal Representative may terminate this Agreement upon seventy-two (72) hours written notice to the Facility. This Agreement shall terminate upon the Resident's death. The Resident's death shall not affect any outstanding obligations to the Facility.

The Facility may terminate this Agreement and transfer or discharge the Resident after giving thirty (30) days written notice or such notice as is reasonable under the circumstances, to the Resident and the Resident's Legal Representative as set forth below. Any termination under this Agreement shall result in charges being prorated as of the date on which this Agreement terminated or date the Resident vacates the Facility, whichever is later.

The Resident may remain in the Facility without being involuntarily discharged or transferred unless:

a. The welfare of the Resident cannot be met;

b. The Resident's medical condition has improved sufficiently and nursing care and services are no longer needed;

c. The Resident's remaining at the Facility endangers the safety and or health of others;

   **d.** The Resident/Legal Representative fails to pay or cause to have paid for nursing care and services provided; and/or,

   **e.** The Facility ceases operation.

In the event of an involuntary discharge or transfer, the Resident will be accorded all rights provided by State and Federal law including, but not limited to, thirty (30) days prior written notice.

**2.** At the time of discharge, for whatever reasons, all outstanding accounts shall be paid in full. If this Agreement is terminated by the Facility, a thirty (30) day written notice, prior to the date of discharge or transfer, must take place. If the Resident is not removed from the Facility on or before the expiration of the thirty (30) day period, and subject to other applicable Federal, State and Local regulations, the Facility shall be authorized to transport the Resident to the Resident's or Legal Representative's address as indicated herein, or to a location selected by the Resident/Legal Representative, at the expense of the Resident/Legal Representative.

**3.** The Facility reserves the right to terminate or unilaterally amend this Agreement, without liability, to comply with any legal order, rule, regulation, standard, or interpretation issued, enacted or promulgated by a Federal, State or Local department, agency or commission that invalidates or is inconsistent with the terms of this Agreement or that would cause one of the parties to be in violation of the law. If the Facility deems it necessary to amend this Agreement, as provided for in this Paragraph, and the amendment is unacceptable, the Resident/Legal Representative may choose to terminate this Agreement without liability.

**4.** In the event of termination, all charges will be prorated as of the date on which this Agreement terminates. If the Resident/Legal Representative have made any payments in advance, the excess shall be refunded to the Resident.

**G.** **Miscellaneous Covenants**

**1.** This Agreement shall be construed and governed by the laws of the State of Illinois.

**2.** This Agreement represents all of the understanding between the parties, and no conditions, terms, or provisions shall govern this Agreement which are not specifically contained or referred to herein. This Agreement shall not be

modified, altered or otherwise subject to any oral statements or representations not incorporated in writing with this Agreement.

3. If any clause, word, term or condition of this Agreement should be ruled invalid by a court of competent jurisdiction or is a violation of any Local, State or Federal law, then such clause, word, term or condition shall be considered deleted from this Agreement and the balance of this Agreement shall be continued in full force and effect.

4. As used in this Agreement, all pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural, whenever the identity of the person, persons or entity or the facts require such construction.

5. Paragraph titles or captions are for purposes of convenience only and do not in any way define, limit, extend or affect the scope or meaning of this Agreement.

6. Nothing in this Agreement shall be construed as creating any continuing obligations for the rendering of nursing services on any basis other than that set forth in this Agreement or required by applicable law. The Facility accepts no obligation to continue providing services to any resident whose status, coverage classification or eligibility changes from that set forth in this Agreement.

7. The undersigned attest that they have read these Miscellaneous Covenants, understand their meaning and accept them as part of the Agreement between Resident and Facility.

8. By signing this Agreement, the Resident and Legal Representative acknowledge that they have read, understand and accept the terms and conditions contained in this Agreement and have received, read, understand and accept a copy of the Agreement Between Resident and Facility

9. By signing this Agreement, the Resident and the Legal Representative agree they are liable for any charges, as stated in this Agreement, accruing hereunder.

13.

## ACKNOWLEDGMENT OF ADMISSION INFORMATION

This hereby acknowledges that I have received, before or at the time of admission, and have had explained to me the following information:

1.  How to apply for and use Medicare/Medicaid/Spousal Impoverishment Rights

2.  Services available in the Facility and charges for services

3.  Admission and Discharge Information

4.  Bed Hold and Readmission Policy

5.  A copy of the Resident Rights

6.  The Facility's grievance procedures

7.  Preadmission information requirements

8.  Personal Funds Policy

9.  Name and specialty of attending physician and methods of contacting physician

10. Advance Directive Policy

11. Notice of Privacy Practices

12. Restraint Policy

Other: _____

_____

_____

14.

_Viola Curtis_
**Resident's Name**

**Address**

_MARY MASLANKA_
**Legal Representative's Name**

**Address**

**Home Phone**                              **Work Phone/Pager**

**Employer**                        **Address, City, State, Zip**

Signed this ___21^ST___ day of ___March___, 200_7_

**_Chateau Village Nursing_**
**_& Rehabilitation Center_**
**Facility**                              **Resident   (Signature)**

_Elliot A. Berwin_                      _Mary L. Maslanka_
**Authorized Signatory of Facility - Title**      **Legal Representative   (Signature)**

*This Agreement was prepared by and for Care Centers, Inc. and is not to be utilized for any other purpose.*

CPLIC

REV 1-2005 SLKM

**EXHIBIT F**

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.

**120 S. LaSalle Street, 18th floor**
**Chicago, Illinois 60603-3403**
**(312) 739-4200**
**(800) 644-4673**
**(312) 419-0379 (FAX)**
Email: info@edcombs.com
www.edcombs.com

**August 1, 2008**

Fax to 866.835.6400

TekCollect Corporation
1111 Schrock Road
Suite 100
Columbus, OH 43229

Re:     **Mary Maslanka/ Chateau Village**

Ladies/ Gentlemen:

Please be advised that we represent the above individual and that our client disputes the claimed debt(s) described above.  Please provide any contract or agreement signed by our client.  The only documentation we have seen obligates Viola M. Curtis.  We know of no basis on which Mary Maslanka is personally liable for this debt.   If you have something signed by Ms. Maslanka and obligating her personally, please send it to us.

Unless and until such proof is furnished, we do not recognize any right on your part to attempt to collect any amount from our client through any means, including credit reporting.

Thank you.

Sincerely,

Daniel A. Edelman

cc: Mary Maslanka

**<u>EXHIBIT G</u>**

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
### 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
Email: info@edcombs.com
www.edcombs.com


August 18, 2008


Mr. Mark Gilbert
TekCollect Corporation
1111 Schrock Road
Suite 100
Columbus, OH 43229

Re:    **Mary Maslanka/ Chateau Village**

Dear Mr. Gilbert:

It is apparent from your letter of August 7, 2008 that you have no basis whatever for asserting any personal liability on the part of Ms. Maslanka. Ms. Maslanka rejects any such liability.




Sincerely,

Daniel A. Edelman

cc: Mary Maslanka